Brian A. Ertz (ISB # 9960)
ERTZ LAW, PLLC
Post Office Box 665
Boise, ID 83701
(208) 918-1663 (Telephone)
(208) 545-9770 (Facsimile)
brian@ertzlaw.org

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| DEBORAH BROWN and JOHN RAY, ) | |
| ) | Case No. 1:17-cv-52 |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | COMPLAINT AND DEMAND FOR |
| LAW PROPERTY MANAGEMENT, ) | JURY TRIAL |
| INC. and RANDY HOFFER, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

COMES NOW the Plaintiffs, Deborah Brown and John Ray, by and through their

counsel, Brian A. Ertz of Ertz Law, PLLC for a cause of action against Defendants,

complaining and alleging as follows:

## I.   INTRODUCTION

This action seeks monetary, declaratory, and injunctive relief, alleging that Plaintiff

parties have been injured, and will continue to be injured, as a result of Defendants'

repeated and ongoing pattern and practice of: (1) Housing discrimination on the basis of

disability in violation of the Federal Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3601 *et seq.* and unlawful coercion, intimidation, threat, and interference in the exercise or enjoyment of Plaintiff parties' rights therein; (2) Unfair or deceptive acts and practices in the conduct of their trade or commerce as prohibited by the Idaho Consumer Protection Act, I.C. § 48-6001 *et seq.*; and (3) Repeated, outrageous, and wanton violations of the Idaho Manufactured Home Residency Act, I.C. § 55-2001 *et seq.* such that constitute ongoing oppression.

## II.  <u>JURISDICTION AND VENUE</u>

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this action arises under the laws of the United States, namely 42 U.S.C. §§ 3604, 3617, and 3613. This Court has supplemental jurisdiction to hear and determine Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 as those claims are related to Plaintiffs' federal law claims and arise out of a common nucleus of related facts. Plaintiffs' state law claims arise under Idaho's Manufactured Home Residency Act, Idaho Code 55-2001 *et seq.*; the Idaho Consumer Protection Act, I.C. § 48-6001 *et seq.*; and common law. Plaintiffs' state law claims are related to the federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this District.

3.      Based on the allegations set forth herein, the Court has personal jurisdiction over all defendants in this action.

## II. PARTIES

4.      Plaintiff Deborah Brown ("Debbie") is now, and at all times relevant herein was, a resident of Ada County, State of Idaho.

5.      Plaintiff John Ray ("John") is now, and at all times relevant herein was, a resident of Ada County, State of Idaho.

6.      Defendant Randy Hoffer ("Defendant Hoffer") is now, and at all times relevant herein was, a resident of Ada County, State of Idaho.

7.      Defendant Law Property Management, Inc. (hereinafter "Law Property Management" or "LAW") is now, and at all times relevant herein was, an Idaho corporation doing business in Ada County, State of Idaho.

## III. STATEMENT OF FACTS

8.      Defendant Hoffer owns the lot located at 410 East 43rd Street #8, Garden City, Idaho 83714 (hereinafter "Property" or "Lot"). Defendant Hoffer owns and controls at least dozens of mobile homes and lots, and several mobile home parks throughout Ada County. The Lot is a "dwelling" pursuant to 42 U.S.C. § 3602(b).

9.      Defendant Law Property Management is the entity with which Debbie and John deal on a day-to-day basis regarding the lease of their lot and to whom they pay their rent. Defendant LAW is the managerial agent for Defendant Hoffer, the owner of the subject Property (Defendant Hoffer and LAW hereinafter, along with their agents and representatives, collectively referred to as the "Defendants" or "Landlords").

10.     Debbie and John (hereinafter collectively "Plaintiffs" or "Tenants") lease the Lot from the Landlords.

11.     Debbie has not graduated from high school and John earned his General

COMPLAINT AND DEMAND FOR JURY TRIAL                          Page  3

Education Diploma.

12.     Debbie has been diagnosed with a number of disabilities including Post Traumatic Stress Disorder ("PTSD"), Bipolar Disorder, and other anxiety-related disorders. Debbie's disability substantially limits her learning, limits her ability to perform manual tasks, and prevents her from being gainfully employed. Debbie derives her sole income, delivered not before the third day of every month, from public assistance associated with her disability. As such, Debbie is "handicapped" as that term is defined by the Fair Housing Act ("FHA").

13.     John is Debbie's partner. Debbie and John's combined income is significantly below that of poverty.

14.     Debbie has three children (aged two years-old, nine years-old, and eleven years-old) whom they love, take care of, and who have resided with them. John has three children (aged two years-old, four years-old, and five years-old) two of who primarily reside with Debbie and John.

15.     On or around May 2016 Debbie and John fell upon significant economic hardship and urgently struggled to find and secure safe, affordable housing for themselves and their family.

### The Lease Agreement

16.     The Property at issue in the instant action is situated within a mobile home park ("Eldon Park"), located at 410 East 43rd Street in Garden City, Ada County, Idaho.

17.     Plaintiffs Deborah Brown and John Ray and Landlords entered into a Lease Agreement on or about June 3, 2016 that included a number of Rental Agreement

Addendums (hereinafter collectively referred to as the "Lease" or the "Contract") for

Debbie and John's lease of the Lot upon which a mobile home is situated.

18.    **Exhibit A** to this complaint is a true and genuine copy of Defendant

LAW's state court filings SUMMONS FOR EVICTION, COMPLAINT FOR

EVICTION (EXPEDITED PROCEEDINGS), the LEASE AGREEMENT, and a

THREE DAY NOTICE as filed by Defendant LAW in the District Court of the Fourth

Judicial District of the State of Idaho on January 17, 2017 and subsequently served upon

Plaintiffs.

*The Negotiation*

19.    On or around May 2016 Debbie and John were able to secure public aid

through the Idaho Department of Health and Welfare Navigation Services Program for

use as a rental deposit given their economic and disability conditions and the urgency

with which their family was in need of housing.

20.    Defendant Law Property Management was aware that Debbie and John's

deposit was made available to them as economic aid given their economic vulnerability

and their urgent need for housing.

21.    Defendant LAW received Debbie and John's rental deposit directly from

the Idaho Department of Health and Welfare prior to the execution of the Lease.

22.    Upon information and belief, Defendant LAW obtained and deposited

Debbie and John's rental deposit into its banking account prior to the day of Debbie and

John's review of the Lease and prior to Debbie and John signing the Lease.

23.    Upon initial inquiry, Defendant LAW informed Debbie and John that in

order to apply for a lease of the Lot they would first need to purchase the mobile home

situated atop the Lot from a third party.

24.     LAW insisted upon the prior purchase of the mobile home, advising Debbie and John that it would not be legal to rent the home from the third party while leasing the Lot.

25.     Accordingly, Plaintiffs and a third party negotiated and entered into a 'Residential Lease Agreement With Option To Purchase' for the mobile home (hereinafter the "Home") that occupied the Lot. On or around May 6, 2016 Deborah and John signed the Residential Lease Agreement with Option to Purchase the Home with the third party. Debbie and John make rent-to-own payments for the Home of $200.00 per month. The sale price of the Home is $2,000.00.

26.     LAW insisted on verifying Debbie and John's agreement to purchase the Home was executed prior to scheduling a meeting to arrange for lease of the Lot upon which the Home is situated.

27.     On multiple occasions prior to its ultimate execution, Defendant LAW denied Debbie and John's request to see a copy of or otherwise review the Lease, its provisions, or its terms prior to their scheduled opportunity to sign the Lease.

28.     Defendant LAW refused to execute the Lease until June 2016.

29.     Prior to signing the Lease, Debbie asked LAW's agent whether the Lease provided a provision that Debbie and John would be given at least 24-hours of notice prior to the landlord stopping by or otherwise occupying the property because Debbie suffered from PTSD and anxiety, symptoms of which can be triggered and aggravated when individuals stop by unannounced and suddenly.

30.     LAW's agent assured Debbie that the Lease provided 24-hour notice and

COMPLAINT AND DEMAND FOR JURY TRIAL                              Page  6

that Debbie and John would be given 24-hour notice prior to anyone stopping by.

31.     The Lease was presented to Debbie and John for their signatures on a 'take it or leave it' basis.

*The Contract*

32.     On information and belief, the Lease is a form contract with substantively unchanging terms that Defendants use as a routine business practice when negotiating with prospective tenants, to enter into agreement with tenants, and when enforcing terms with existing tenants.

33.     A genuine copy of the Lease is included with **Exhibit A** (Appx007-033) to this complaint and made a part of this complaint.

34.     Plaintiffs believed that LAW's business name conveyed and suggested a heightened degree of credibility, legitimacy, and authority as compared to similarly situated businesses of which they were aware.

35.     The Lease is 28 pages and includes redundant and/or contradictory terms and provisions that confused Debbie and John as to how the terms and conditions operate.

36.     Given their confusion, and given Debbie and John's belief that LAW had a heightened legitimacy, credibility, and authority, Debbie and John relied upon LAW to ascertain the meaning and effect of the terms and provisions of the Lease.

37.     The Lease explicitly provides that the sewer utility shall be furnished and paid by Landlords.

38.     The Lease likewise explicitly provides that "Landlord/Agent will repair plumbing. . ." and that "**For the purposes of this Monthly Rental Agreement,**

COMPLAINT AND DEMAND FOR JURY TRIAL                                Page  7

**emergency maintenance request is** . . . **backed up sewer** . . ." (emphasis in original).

39.     At the time the Lease was executed, the Landlords warranted that the sewage drains were in good working order.

40.     The Lease includes redundant provisions for assessment of fines, fees, and increases in rent where a tenant fails to pay rent by the first of the month or violate any number of the provisions of the Lease. The Lease explicitly provides that no exceptions to the hard deadline of the first of the month to pay rent are made for weekends, holidays, or postal delays.

41.     The Lease includes "trip/service" notice charges of $50.00 to be included in addition to underlying fine/fee assessments where a tenant violates any of numerous provisions of the Lease.

42.     Because Debbie's disability check does not arrive until the third of the month, Debbie and John have paid a monthly fee of $20.00 that LAW offers its tenants to provide a five (5) day extension on the due date for rent.

43.     The fee of $20.00 is assessed off-lease, there is no provision in the Lease providing a tenant five (5) extra days to pay rent for a $20.00 fee.

44.     The Lease provides that the trash utility shall be furnished and paid by Landlords.

45.     On or about June 18th Defendant LAW assessed a $50.00 fee from Plaintiffs for an alleged overage of garbage.

**Sewage Back-Up**

46.     The Home is uninhabitable: a sewer line blockage and back-up has sullied the Lot, the Home, and personal property in proximity to the source of

emergence beneath the Home with raw sewage, rendering the entire area unsafe, hazardous, and dangerous.

47.     On information and belief, this problem is the result of blockage and consequent back-up of the sewer utility originating off the premises but along a line servicing Eldon Park.

48.     On information and belief, back-ups have been recurrent, persistent and have repeatedly occurred before Debbie and John entered into the Lease, for as many as five (5) years, perhaps longer.

49.     On information and belief, at the time the Lease was executed, the Landlords were aware of recurrent sewage system blockages and back-ups affecting proximate and associated lots and properties that are reliant upon the same sewer service on which the Property relies.

50.     On information and belief, at the time the Lease was executed, Landlords had notice, and/or should have reasonably known, that the sewer system servicing the Lot would require a greater measure of maintenance and repair than the Landlords had commissioned in order to prevent frequent, recurrent, and reasonably anticipatable blockages and back-ups onto and into the properties that it serves in Eldon Park.

51.     On information and belief, professional plumbers had previously given Defendants notice of the need to replace the entire offending sewer utility line within Eldon Park.

52.     On information and belief, the back-ups have repeatedly impacted the lives of Eldon Park residents, and rendered their respective lots and mobile homes uninhabitable.

**Home; Lot #8**



53.    On or about July 18, 2016 Debbie and John noticed a foul smell permeating their Home. At about the same time they noticed moisture accumulating on the ground in their garage, and noticed a foul odor in various areas of the Home.

54.    On or about August 11, 2016 John removed the skirting to the Home, crawled underneath, and observed the entire crawl space beneath the Home had been flooded with raw sewage:





55.   That same day Debbie contacted LAW and requested repair of the sewer

utility servicing their Home and cleanup of the sewage. On or about August 11, 2016 a

plumber made a maintenance visit, diagnosed the source and extent of the problem, and

declared to Debbie and John that to fix the problem and remediate the sewage the Home

would need to be removed from the Lot, the soil upon which the Home was situated

would need to be excavated and replaced, the sewer line and fixtures servicing the Lot

would need to be replaced, and that given its condition, it was his opinion that it was

advisable to condemn the whole lot.

     56.    The plumber likewise advised Debbie and John to move as the Home was not safe, not healthy, and not habitable.

     57.    The presence of raw sewage in and around her home triggers and aggravates Debbie's disability causing her significant stress and anxiety.

     58.    On or about August 12, 2016 a man, who on information and belief LAW relies upon for 'handy-man' services at Eldon Park ("handy-man"), visited the Home, removed the skirting to the Home, dug around a pipe, and wrapped the pipe in tape. The man proceeded to collect an amount of sewage from underneath the home, placed the sewage in a number of plastic bags, placed the plastic bags outside on the Lot and against the Plaintiffs' home, re-affixed the skirting, and left.



     59.    A majority of the original sewage, and an increasing amount, remained on the Lot underneath the Home subsequent to the handy-man's application of tape and

COMPLAINT AND DEMAND FOR JURY TRIAL         Page  13

bagging of sewage. The plastic bags of sewage lay exposed, adorning the Lot

surrounding Debbie and John's home for weeks:



60.    On or about August 12, 2016 Debbie and John noticed that many of their

stored personal belongings and property had been destroyed by the moisture and

sewage.

61.    On or about August 12, 2016 Defendant LAW's agent visited their Home

and threatened Plaintiffs with a $50.00 fee for a piece of Plaintiffs' property being

placed on the driveway of the Lot. The property was placed in the driveway as Debbie

and John assessed the extent of damage to their property.

62.    On or about August 12, 2016 Debbie and John discovered that their copy

of the Lease had been destroyed by the sewage back-up. When Debbie and John

requested a new copy, LAW assessed a $20.00 fee for the new copy.

63.    On or about August 13, 2016 Debbie's nine-year old daughter fell

considerably ill. The same day, Debbie's nine-year old daughter was hospitalized for the

illness and diagnosed by a medical physician for symptoms consistent with meningitis infection.

64.     On or about August 13, 2016 Debbie and John made the decision that, given the condition of their Home, Debbie's hospitalized daughter would be healthier and safer staying with her grandmother at her grandmother's home. Debbie and John made the necessary arrangements, and Debbie's daughter has been residing at her grandmother's home since her discharge from the hospital.

65.     Despite LAW having taped the pipe under Debbie and John's home, the problem persisted, and the sewage continued to accumulate through the month of August and into September. Eventually, the collective raw sewage of Eldon Park flooded Debbie and John's garage space and began to submerge their property:





**Debbie and John's Exercise of Right**

66.    **Exhibit B** are true and correct copies of correspondences between Tenants and Landlords received by Defendant LAW made a part of this complaint.

67.    On or about September 2, 2016 Debbie and John hand delivered to LAW a written Notice And Demand To Make Repairs and Corrections of the sewage line back-up and for remediation of the soil underneath their home to habitable condition. A genuine copy of the September 2, 2016 notice is included with **Exhibit B** (Appx035) to this complaint and made a part of this complaint.

68.    On or about September 9, 2016 Defendant Hoffer, along with at least two other unknown men, entered the premises without notice or permission and began shuffling through Debbie and John's belongings.

69.    When Debbie asked Defendant Hoffer for 24-hour notice to

accommodate her disability, Defendant Hoffer responded that no such notice was required because the lease was not effective given a fixture to the mobile home was not up to local code.

70.     Debbie and John understood Defendant Hoffer's response to be a threat.

71.     Defendant Hoffer's abrupt and unannounced entrance, and his threatening behavior, caused Debbie significant stress, anxiety, and otherwise triggered and aggravated her disability, causing her significant emotional distress and suffering.

72.     On or about September 10, 2016 the men accompanying Defendant Hoffer the day prior again entered and occupied the premises without notice and under color of authority to do so at will and Defendant Hoffer's previous threat.

73.     On or around the beginning of September 2016, a plumber ran a line through the sewer line off of the Lot but within Eldon Park, clearing the line of blockage, and told Debbie and John that it would merely be a temporary fix, the sewer line running through Eldon Park would need to be replaced to prevent blockage and backups from recurring.

74.     On or about September 11, 2016 Eldon Park's handy-man began digging a two foot trench under Debbie and John's Home.

75.     From on or about September 11, 2016 to on or about September 15, 2016 Eldon Park's handy-man engaged in plumbing activities underneath Debbie and John's Home.

76.     On or about September 15, 2016 Eldon Park's handy-man and other agents of LAW sprinkled a white powder underneath the Home, used Debbie's rake to spread it around, and declared the repairs and the cleanup complete.



77.     The Lot sewer fixtures and piping are nonfunctional. The soil on the Lot beneath the Home remains sullied with hazardous waste.

78.     On or about September 16, 2016 Debbie and John noticed that their water had a foul odor. Debbie and John's water is undrinkable and unusable.

79.     On or about September 28, 2016 both Defendants Hoffer and LAW were in receipt of a Notice and Demand To Make Repairs and Corrections Pursuant to the Manufactured Home Residency Act demanding repairs to the sewer utility and remediation of the hazardous waste. A genuine copy of the notice is attached to this complaint with **Exhibit B** (Appx036-037) and made a part of this complaint.

80.     Landlords failed to adequately and substantially perform the repairs and corrections necessary to prevent reasonably anticipatable recurrence of sewage backup and failed to remediate the soil to a condition that is not hazardous to health.

81.     In addition, Debbie and John's water pressure is inadequate, sporadically ceasing to deliver adequate pressure to provide for bathing, laundering, and other uses necessary to maintain health and safety. Water pressure has ceased during showering. It can take as many as three days to launder a single load of laundry in a washing machine.

82.     On or about the end of October 2016 to the beginning of November 2016 Defendant LAW was in receipt of Notice And Demand To Make Repairs and Corrections pursuant to Manufactured Home resident Act to provide for adequate water pressure and another Notice and Demand To Make Repairs and Corrections for repairs to the sewer utility to prevent recurrent blockage and backups. Genuine copies of the notices are attached to this complaint with **Exhibit B** (Appx038-040) and made a part of this complaint.

83.     On or about the end of October 2016 to the beginning of November 2016 Defendant LAW received copies of Debbie's Proof of Need For a Reasonable Accommodation pursuant to the Fair Housing Act ("RA"). The RAs requested Landlords to repair the park's sewer system such that blockage and/or back-up not recur, for 24-hour notice prior to Landlords' visitation, and for dispassionate delivery of such notice and all communication with Debbie as such reasonable accommodations may be necessary to afford Debbie equal opportunity to use and enjoy the Property. Genuine copies of the PROOF OF NEED FOR A REASONABLE ACCOMODATION are attached to this complaint with **Exhibit B** (Appx041, 043) and made a part of this complaint.

84.     On or about the end of November 2016 to the beginning of December 2016 Defendant LAW and Defendant Hoffer received an additional correspondence

making demand for repairs and request for reasonable accommodations. A genuine copy of the correspondence is attached to this complaint with **Exhibit B** (Appx045-048) and made a part of this complaint.

85.     On December 8, 2016 Defendand LAW, through counsel, denied Debbie's request for reasonable accommodation and refused to make repairs and corrections as previously demanded. A genuine copy of the correspondence is attached to this complaint with **Exhibit B** (Appx049-050) and made a part of this complaint.

86.     On December 19, 2016 Debbie and John, through counsel, reiterated request for reasonable accommodation and made demand for repairs and corrections. A genuine copy of the correspondence received by Defendant LAW's counsel is attached to this complaint with **Exhibit B** (Appx051-056) and made a part of this complaint.

87.     Through Landlords conduct and failure to accommodate, Landlords refused Debbie's request for reasonable accommodation.

88.     The performance that the professional plumber who visited Debbie and John on August 11, 2016 maintained necessary to fix and remediate the sewer line back-up has not taken place.

**Recurrent Sewage Back-up**

89.     On or about Thanksgiving Day, November 24, 2016, Debbie and John again noticed a foul odor emanating throughout their home. That same day their toilet backed-up. As a result, Debbie experienced extreme frustration and anxiety and has been unable to use and enjoy the Home.

90.     The next day, November 25, 2016, the foul odor intensified. John went outside, walked around the Home, stuck his head underneath the unit, and observed

liquid waste pouring out of one of the sewer line pipes embedded in the soil of the Lot.

91. On or about November 26, 2016 a professional plumber visited the Lot, again snaked the line off-site, and declared that the source of the back-up was a main line of the sewer utility servicing Eldon Park. The plumber acknowledged that this was not unanticipated and reiterated that it will continue to happen until the line servicing Eldon Park is replaced.

**Retaliation**

92. On or about November 1, 2016, while John was delivering rent to LAW, LAW's managerial agent handed John a Tenancy Termination Notice. LAW's notice lists February 1, 2017 as the date upon which LAW expected Debbie and John to be vacated from the premises.

93. As LAW delivered John the termination notice, LAW explained to John that "this is something you brought onto yourselves."

94. LAW further explained that if Debbie and John wanted to pursue legal recourse that their effort would not be successful, that LAW knew the judge, and that the judge would not give Debbie and John what they wanted.

95. On or about November 10, 2016 John came upon a piece of paper affixed to the exterior of Debbie and John's home. The paper was a notice from the Garden City Police threatening citation if trash was not removed from the premises within seven (7) days. Debbie and John immediately rented a U-haul and disposed of the trash.

96. On information and belief, the Garden City Police were summoned to cite specifically Debbie and John by a third party, despite the condition of their Home being no worse than many throughout Eldon Park. The trash included property

destroyed by the sewage backup that had not been remediated by the Landlords.

97.     On or about November 23, 2016 LAW delivered a 'Notice of Breach of Lease (Three Day Notice)' making demand of Debbie and John to "1. Remove the leaves, remover [sic] the stuff in carpor [sic] or shut carport door. 2. Pay the $50.00 notice fee as per your lease."

98.     On December 1, 2016, after having made full payment of rent and in addition the $20.00 off-Lease fee for extension of due date, Debbie and John's balance was $50.00. On December 1, 2016 LAW threatened to immediately evict Debbie and John, and to assess late rent fines and fees, for their failure to pay the immediately aforementioned $50.00 notice fee.

99.     On December 9, 2016 LAW posted a Three Day Notice now characterizing the previous $50.00 balance as "rent," further assessing $130.00 in late fees and an additional $50.00 Non Payment Notice fee demanding a total of $230.00. A genuine copy of the Three Day Notice is attached to this complaint with **Exhibit A** (Appx034) and made a part of this complaint.

100.     By Tuesday, January 3, 2017, despite Debbie and John again having made full payment for rent, the $50.00 notice fee assessed the month prior had compounded, assessing Debbie and John with a purported balance of $510.00.

101.     On January 7, 2017 the water utility servicing Debbie and John's Home ceased altogether. That same day Debbie called Defendant LAW to complain and made demand for repairs.

102.     From January 7, 2017 until January 25, 2017 the water service to Debbie and John's Home was nonfunctional; Debbie, John, and their children went without

water. Debbie repeatedly demanded correction and repair of the water utility servicing Debbie and John's Home.

103.    On January 17, 2017 Defendant LAW filed its COMPLAINT FOR EVICTION (EXPEDITED PROCEEDINGS) ("Expedited Eviction"), SUMMONS FOR EVICTION, and supporting exhibits in the District Court of The Fourth Judicial District of the State of Idaho, In And For The County of Ada. A trial date on the Expedited Eviction was set for January 26, 2017. **Exhibit A**.

104.    On January 18, 2017 Defendant LAW posted notice that the water utility would be shut off from January 23, 2017 until January 27, 2017.

105.    On January 26, 2017, under threat of immediate eviction, the parties entered into a stipulated agreement that Deborah and John would have until February 9, 2007 to sell the Home atop the Lot and vacate the premises altogether.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**For Violations of The Fair Housing Act
42 U.S.C. § 3604(f)**

*By All Plaintiffs Against All Defendants*

106.    Plaintiffs incorporate all preceding allegations herein by reference as though fully set forth herein.

107.    The Defendants have discriminated in the terms, conditions and priveleges of the sale or rental of a dwelling, and the services and facilities in connection therewith, on the basis of "handicap".

108.    Plaintiff Brown has handicaps and had handicaps during her tenancy at Eldon Park and at all times relevant herein.

109.    Plaintiff Ray is a person associated with Plaintiff Brown.

110.    Defendants knew or reasonably should have known of Plaintiff Brown's handicaps.

111.    Accommodation of Plaintiff Brown's handicaps by lawfully making such repairs and corrections to the sewer utility necessary to reasonably prevent persistent and recurrent blockage and back-up of raw sewage onto and into the premises was both reasonable and may have been necessary to afford Plaintiff Brown an equal opportunity to use and enjoy the premises.

112.    Accommodation of Plaintiff Brown's handicaps by providing 24-hours of notice prior to entering upon Plaintiff Brown's property was both reasonable and may have been necessary to afford Plaintiff Brown an equal opportunity to use and enjoy the premises.

113.    Accommodation of Plaintiff Brown's handicaps by dispassionately communicating with Brown was both reasonable and may have been necessary to afford Plaintiff Brown an equal opportunity to use and enjoy the premises.

114.    Plaintiff Brown requested that Defendants make these reasonable accommodations.

115.    Defendants, acting personally or through others, refused and continued to refuse to make reasonable accommodations of Plaintiff Brown's handicaps.

116.    Defendants, acting personally or through others, engaged in and continue to engage in discriminatory housing practices.

117.    Such conduct is willful and intentional, and exhibits reckless or callous indifference for the rights of the victims.

118.    Because Plaintiff Brown has been injured by Defendants' discriminatory housing practices, Plaintiff Brown is an aggrieved person.

## SECOND CAUSE OF ACTION

**For Violations of The Fair Housing Act
42 U.S.C. § 3617**

*By All Plaintiffs Against All Defendants*

119.    Plaintiffs incorporate all preceding allegations herein by reference as though fully set forth herein.

120.    Defendants coerced, intimidated, threatened or interfered with Plaintiff Brown in her exercise or enjoyment of rights granted or protected by 42 U.S.C. § 3604(f) or on account of Plaintiff Brown having exercised or enjoyed such rights.

121.    Defendants, acting personally or through others, engaged in and continued to engage in discriminatory housing practices.

122.    Because Plaintiff Brown has been injured by Defendants' discriminatory housing practices, Plaintiff Brown is an aggrieved person.

## THIRD CAUSE OF ACTION

**For Violations of The Manufactured Home Residency Act
I.C. § 55-2001 *et seq***

*By All Plaintiffs Against All Defendants*

### I.C. § 55-2014

123.    Plaintiffs incorporate all preceding allegations herein by reference as though fully set forth herein.

124.    The Defendants have failed to maintain in good working order the sewer and water services supplied by them, as landlords.

125.    The Defendants have maintained the Property in a manner hazardous to the health or safety of the Plaintiffs and Plaintiffs' children.

126.    The Defendants have breached terms and provisions of the Lease materially affecting Plaintiffs' and Plaintiffs' children's health and safety.

127.    The Defendants are maintaining the Property in a manner hazardous to the Plaintiffs' and Plaintiffs' children's health and safety.

128.    The Defendants have not corrected their failures and breaches within three days of service of a notice and written demand requiring performance or cure listing each failure and breach upon which this action is premised.

129.    The Defendants acted with malice, wantonness and/or oppression.

130.    The Defendants and their children have suffered actual damages to their property, physical injury, emotional distress, and economic damages.

<u>I.C. § 55-2007</u>

131.    Plaintiffs incorporate all preceding allegations herein by reference as though fully set forth herein.

132.    The Defendants have failed to provide a rental agreement executed between the landlord and resident that contains the terms for the payment of rent, including the time and place for payment, and a description of any other charges to be paid to the landlord by the resident.

133.    The twenty dollar ($20.00) fee that Landlords offer to tenants for an additional five (5) days to pay rent to avoid assessment of fines, fees, and rent hikes is not contained nor described in the rental agreement.

134.    The fifty dollar ($50.00) notice fee assessed against Plaintiffs is unconscionable.

COMPLAINT AND DEMAND FOR JURY TRIAL                              Page  26

135.   The derivative late charges assessed against Plaintiffs are unconscionable.

136.   Because Plaintiffs have paid aforesaid fee to avoid consequences of late payment of rent, they have sustained economic damages.

137.   Because late charges assessed derive from, and are themselves independently, unconscionable provisions of the Lease, and because those amounts continue to compound and be assessed, Plaintiffs have and are sustaining economic damages.

### I.C. § 55-2015

138.   Plaintiffs incorporate all preceding allegations herein by reference as though fully set forth herein.

139.   Defendants terminated a tenancy, refused to renew Plaintiffs' tenancy, decreased services he normally supplies, threatened to and actually brought an action for repossession of a lot in violation of Idaho Code § 55-2015 in retaliation for the lawful and peaceful exercise of Plaintiffs' rights under the law as alleged in preceding allegations and because Plaintiffs:

A.   Complained to the Landlords concerning the maintenance or condition of the community; and,

B.   Retained counsel or an agent to represent their interests.

### FOURTH CAUSE OF ACTION

**For Violations of the Idaho Consumer Protection Act
I.C. § 48-601 *et seq.***

*By All Plaintiffs Against All Defendants*

140.   Plaintiffs incorporate all preceding allegations herein by reference as though fully set forth herein.

COMPLAINT AND DEMAND FOR JURY TRIAL                    Page  27

141.    Defendants' aforesaid conduct and trade practices were unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

142.    Defendants knew, or should have known, that their conduct was perpetrated against a disabled person.

143.    Defendants knew, or in the exercise of due care should have known, that Defendants have in the past, or are causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of services provided.

144.    Defendants knew, or in the exercise of due care should have known, that Defendants have in the past, or are representing that goods or services have sponsorship or approval that Defendants do not have or that Defendants have a sponsorship, approval, status, affiliation, connection, qualifications or license that Defendants do not have.

145.    Defendants knew, or in the exercise of due care should have known, that Defendants have in the past, or are representing that goods and services were of a particular standard, quality, or grade, and they were or are of another.

146.    Defendants failed to deliver to the Plaintiffs at the time of the Plaintiffs' signature a legible copy of the Lease, which the Defendants required the Plaintiffs to sign, which the Plaintiffs signed, during or after the contract negotiation.

147.    Defendants knew, or in the exercise of due care should have known, that Defendants have in the past, or are engaging in an act or practice which is misleading, false, or deceptive to the Plaintiffs.

148.    Defendants knew, or in the exercise of due care should have known, that Defendants have in the past, or are engaging in unconscionable methods, acts, or

practices in the conduct of trade or commerce, as provided in section 48-603C, Idaho Code.

149.    Defendants aforesaid conduct constitutes unconscionable methods, acts, and practices in the conduct of their trade or commerce.

150.    Defendants knowingly or with reason to know, took advantage of Defendants who were reasonably unable to protect their interests because of inability to understand the agreement or a similar factor.

151.    Defendants knowingly or with reason to know, induced Plaintiffs to enter into a transaction that was excessively one-sided in favor of Defendants.

152.    Defendants' sales conduct or pattern of sales conduct outrages or offends the public conscience.

153.    On information and belief Defendants are not a regulated lender as that term is defined in section 28-41-301, Idaho Code.

154.    Plaintiffs suffered ascertainable loss of money or property, as a result of the aforesaid methods, acts, or practices.

155.    Defendants knew that their conduct caused the loss or encumbrance of a disabled person's primary residence.

156.    Defendants' aforesaid methods, acts, or practices were flagrant and repeated.

<u>FIFTH CAUSE OF ACTION</u>

**Negligence**

*By All Plaintiffs Against All Defendants*

157.    Plaintiffs incorporate all preceding allegations herein by reference as

COMPLAINT AND DEMAND FOR JURY TRIAL                    Page  29

though fully set forth herein.

158.    Defendants Hoffer and LAW Property Management owed Plaintiff Brown a duty to exercise due care to operate the premises in a manner that was free from unlawful discrimination and to hire, train, supervise, and discipline their employees and agents to fulfill that duty. These Defendants negligently breached that duty by discriminating against Plaintiff Brown based on a handicap by failing to provide her with reasonable accommodations. These Defendants' breach of that duty was the result of negligence, including but not limited to:

    A.    Their negligent failure to train their employees and agents regarding the requirements of fair housing laws;

    B.    Their negligent failure to hire and/or contract persons or entities that were familiar with the requirements of fair housing laws;

    C.    Their negligent failure to supervise their employees and/or agents regarding compliance with the requirements of fair housing laws; and,

    D.    Their negligent failure to discipline or terminate employees and/or agents who failed to comply with the requirements of fair housing laws.

159.    Defendants owed Debbie and John a duty to exercise due care to operate the premises in a manner that was and is healthy, safe, habitable, and free of hazardous waste.

160.    Defendants breached their duty of due care owed to Plaintiffs as previously alleged.

161.    Defendants' breach of their duty of care owed to Plaintiffs was outrageous.

162.    Defendants' breach of their duty to exercise due care owed to Plaintiffs was a cause in fact of Plaintiffs' injuries.

163.    Defendants acted willfully and/or recklessly in breaching their duty to exercise due care owed to Plaintiffs.

164.    As a direct and proximate result of the Defendants' negligence and/or recklessness, Plaintiffs' child suffered physical illness and harm.

165.    As a direct and proximate result of the Defendants' negligence and/or recklessness, Plaintiffs' children lost consortium with their parents, as previously alleged.

166.    As a direct and proximate result of the Defendants' negligence and/or recklessness, Plaintiffs have suffered severe emotional distress and have been damaged thereby as previously alleged.

167.    As a direct and proximate result of the Defendants' negligence and/or recklessness, Plaintiffs suffered economic damages as previously alleged.

## V. **RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.      For a declaration that Defendants have violated the provisions of the applicable federal fair housing laws, the provisions of the Manufactured Home Residency Act, and the Idaho Consumer Protection Act;

2.      For temporary, preliminary, and permanent injunctive relief ordering Defendants to immediately, and within 24 hours of judgment or order by this Court: (a) repair the sewer system utility such that recurrent blockage and/or back-up not reasonably

occur by replacing sewer utility piping and fixtures servicing the Lot and the park, (b) remediate and clean up, to habitable condition, the Lot and the Home as recommended and directed by a certified professional, (c) repair the water utility servicing the Lot such that sufficient pressure exists to afford healthy, habitable condition;

3. For temporary, preliminary, and permanent relief against all practices, breaches, and violations of law complained of herein.

4. The Court should enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the FHA and its implementing regulations.

5. For affirmative relief pursuant to U.S.C. § 3613(c) requiring the Defendants to: (a) arrange for and, along with their partners, agents, employees, assignees and all persons acting in concert with or participating with them, attend, at Defendants' own expense, training regarding fair housing obligations and reasonable accommodation obligations of housing providers under the Fair Housing Act and its implementing regulations; (b) within thirty (30) days of the entry of an order require Defendants to develop internal policies ensuring ongoing and future compliance with all requirements of the Fair Housing Act and its implementing regulations; (c) within thirty (30) days of the entry of an order to submit for the Court's approval an "Anti-Discrimination Addendum" of not more than two (2) pages that clearly and plainly informs Defendants' existing and future tenants of their rights under the Fair Housing Act and that includes prominently the names, phone numbers, and internet website addresses of the following organizations, after first having gained written permission and approval of the form from

the organizations themselves: (1) The Intermountain Fair Housing Council, (208) 383-0695 – 1-800-717-0695, ifhcidaho.org, (2) DisAbility Rights Idaho, (208) 336-5353 – 1-800-632-5125, disabilityrightsidaho.org, (3) Living Independent Network Corp., (208) 336-3335, lincidaho.org; and (d) within thirty (30) days of the Court's approval of the immediately aforementioned "Anti-Discrimination Addendum," Defendants shall include the "Anti-Discrimination Addendum" in all future leases entered into with tenants, and shall send a copy of the "Anti-Discrimination Addendum" to each and every existing tenant;

6.       For judgment declaring the Defendants' aforesaid methods, acts, and practices unlawful and unconscionable under I.C. § 48-603 and I.C. § 48-603C; and for an order enjoining the use of such methods, acts, and practices;

7.       For award, pursuant to I.C. § 48-608, to Plaintiff John Ray of actual damages or one thousand dollars ($1,000), whichever is the greater, for each instance of the Defendants' violation of I.C. § 48-603 and/or § 48-603C; and an award to Plaintiff Deborah Brown of actual damages or fifteen thousand dollars ($15,000), whichever is the greater, for each instance of the Defendants' violation of I.C. § 48-603 and/or § 48-603C;

8.       For Plaintiffs' general damages in the amount proven at trial;

9.       That the Court treble relevant damages pursuant to Idaho Code I.C. § 55-2017 or other applicable law;

10.      For Plaintiffs' reasonable costs, disbursements, and attorney's fees incurred herein pursuant to 42 U.S.C. § 3613, I.C. § 48-608, § 55-2018, or other applicable law;

11.      For leave to amend this Complaint to seek punitive damages in an amount

to be determined at trial;

12.     The Defendants should be jointly and severally liable for any and all damages, including an award of attorney's fees and costs, awarded in this proceeding; and,

13.     For such other and further relief as to the Court deems just and equitable.

## VI. DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on any and all issues properly triable by jury in this action.

DATED this ____2nd____ day of February, 2017

Brian A. Ertz
ERTZ LAW, PLLC
*Attorney for Plaintiffs.*